## COSULICH LINE OF TRIESTE v. BOWERS.
### No. 310.

Circuit Court of Appeals, Second Circuit.
April 20, 1931.

L. HAND, Circuit Judge, dissenting.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Charles T. Cow-enhoven, Jr., and H. Maurice Fridlund, both of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Harry G. Herman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This action is brought to recover a tax imposed by section 800, title 8, of the Revenue Act of 1926 (44 Stat. [pt. 2] 99 [26 USCA § 901]) upon the sale of steamship tickets. It provides: " * * * There shall be levied, collected, and paid, for and in respect of the several * * * documents * * * mentioned and described in Schedule A of this chapter, * * * by any person who makes, signs, issues (or) sells * * * the same * * * the several taxes specified in such schedule."

Schedule A (5) provides in part as follows: "Passage ticket, one way or round trip, for each passenger, sold or issued in the United States for passage by any vessel to a port or place not in the United States. * * * "

By agreement of May 27, 1926, the Salaam Temple of Newark, N. J., agreed to purchase the full complement of passenger accommodations at a fixed charge, on the Presidente Wilson for a return trip from New York to Bermuda. The appellant claimed it contracted for a private charter of the vessel, while the appellee says it was a sale of tickets in bulk. The contract between the Salaam Temple and the steamship company provided, among other things, in paragraph 7, that—

"Operating expenses, including port charges—docking, pilotage and other incidentals in operating the ship, will be borne by this Company."

Paragraph 9: "The stay at Bermuda must be left to the discretion of the Captain in order to insure his arrival back to New York on Monday morning. * * * "

Paragraph 10: *"Membership cards:* It is understood that each guest will be provided by you with a membership card on which will appear the berth and cabin assigned and will be used as identification of the guest on board."

Paragraph 12: "Contract as drawn up is in accordance with the general terms and conditions of the regular ocean steamship

passenger ticket on file in this office and at the disposal of your Committee at all times."

The identification ticket issued by the Salaam Temple provided: "While it is the aim of Salaam Temple to give all passengers the best possible service and attention throughout, responsibility must be declined by Salaam Temple for damages or delays on the Pilgrimage, or through imposition of quarantine, customs inspection, or any casualty or untoward incident which may be occasioned by circumstances beyond the control of Salaam Temple. Transportation is furnished by the Cosulich Line in accordance with their general rules, regulations and passage contract."

These provisions of the contract and the understanding stated in the identification ticket show that the agreement was for the transportation of the passengers, and, while all the passenger space was reserved by the Salaam Temple, it is quite clear that this was not a demise of the vessel to the Temple. The control of the vessel remained with the owner. Its navigation and operation were in the hands of the vessel owner. Indeed, the Salaam Temple exercised no degree of control over the vessel other than the right to transportation and the exclusive accommodation for its members and friends as passengers. The rule is stated in Leary v. United States, 81 U. S. (14 Wall.) 607, 610, 20 L. Ed. 756, as follows:

"If the charter-party let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated. But, on the other hand, if the charter-party let only the use of the vessel, the owner at the same time retaining its command and possession, and control over its navigation, the charterer is regarded as a mere contractor for a designated service, and the duties and responsibilities of the owner are not changed. In the first case the charter-party is a contract for the lease of the vessel; in the other it is a contract for a special service to be rendered by the owner of the vessel."

See, also, The Allianca, 290 F. 450 (D. C. E. D. Va.); Boston Elevated Ry. Co. v. Malley, 288 F. 864 (D. C. E. D. Mass.).

The tax in question is to be paid, under the phrase of the statute, on passenger tickets sold or issued, one way or round trip for each passenger. The sale of tickets provided for a minimum of 400 passengers for a lump sum of $30,000. The berthing capacity of the vessel was stated to be in excess of 400, but a flat rate of $35 was specified to cover all passengers booked in excess of the minimum number of 400. An initial deposit of $5,000 was paid, and "the balance of the total passage money, including passengers booked in excess of 400," was to be paid prior to the commencement of the voyage. There were 451 passengers, and, dividing that number into the lump sum of $30,000, the Commissioner arrived at the figure of $67 as the cost of passage per person. He assessed a tax of $5 for each of the 451 passengers. The tax is to be paid under the statute by the person who issues and sells the tickets. The Salaam Temple members were the passengers. It merely identified by its cards the persons and the accommodations they were to occupy on the vessel. The transportation was by the steamship company. It had control of the navigation, and had charge at all times of the vessel, and this was by its officers and crew. It paid the expenses of the operation of the vessel, the lighterage and docking charges. The Temple merely purchased all the tickets for the voyage. When it obtained the tickets, it distributed them with identification cards to its members, but in the first instance the appellant sold the 451 tickets to the Salaam Temple for passengers to be carried on its vessel on a trip between New York and Bermuda. What happened after that sale is unimportant. It is a sale which is taxable within the statute.

Judgment affirmed.

L. HAND, Circuit Judge, dissenting, without opinion.